UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK PRICE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NCR CORPORATION,<br><br>Defendant. | No. 12 C 3413<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Mark Price ("Plaintiff") brings this class action against NCR Corporation ("Defendant") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1 *et seq.*; and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.* (R. 1, Compl.) Presently before the Court is Defendant's motion to compel arbitration and stay these proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (R. 12, Def.'s Mot.) For the reasons set forth herein, the Court grants Defendant's motion.[1]

### RELEVANT FACTS

Defendant provides computer products and services throughout the nation, including Illinois. (R. 1, Compl. ¶ 7.) Defendant keeps track of employee wages and hours and maintains employee compensation policies for all employees. (*Id.* ¶ 9.) Plaintiff and putative class

---

[1] The Court also grants Plaintiff's first and second motions for leave to supplement. (R. 31; R. 35.) While the Court has taken the supplemental material into consideration, the material does not affect the Court's decision.

1

members were employed by Defendant and classified by Defendant as "non-exempt customer engineers" or "technicians." (*Id.* ¶¶ 5-6.) Plaintiff and putative class members had similar job descriptions, responsibilities, and compensation plans. (*Id.* ¶ 8.) Plaintiff alleges that Defendant violated the FLSA, the IMWL, and the IWPCA by failing to: (1) maintain correct records of the hours he and putative class members worked; and (2) compensate Plaintiff and putative class members appropriately for scheduled overtime hours, extra hours worked before and after scheduled shifts, and meal breaks. (*Id.* ¶¶ 11-13.) Plaintiff also alleges that Defendant consciously acted in this manner in order to reduce its labor and payroll costs. (*Id.* ¶¶ 14-15.)

According to Defendant, Plaintiff and Defendant entered into a "Mutual Agreement to Arbitrate All Employment Related Claims" ("Agreement") in December 2007. (R. 14, Def.'s Mem. at 2; R. 14, Def.'s Mem., Ex. B-1, Agreement.) Pursuant to the Agreement, the parties must submit to binding arbitration to resolve any dispute that cannot be resolved through "voluntary internal processes." (R. 14, Def.'s Mem., Ex. B-1, Agreement.) Issues that proceed to binding arbitration include "every possible claim (other than workers compensation claims or claims for benefits covered by the Employee Retirement Income Security Act) arising out of or relating in any way to [Plaintiff's] employment" with Defendant. (*Id.*) According to the terms of the Agreement, arbitration hearings "will by conducted by the American Arbitration Association (the "AAA") under the AAA's rules." (*Id.*) The Agreement instructs that "[a]ny issue or dispute concerning the interpretation or enforceability of this Agreement shall be resolved by the arbitrator." (*Id.*) Additionally, the Agreement states that the parties "intend for this Agreement to be interpreted broadly to allow arbitration of as many disputes as possible." (*Id.*)

**PROCEDURAL HISTORY**

2

On May 4, 2012, Plaintiff filed his complaint with the Court in his individual capacity and on behalf of similarly situated individuals. (R. 1, Compl.) Plaintiff brings three claims against Defendant. In Counts I and II, brought on behalf of himself and others similarly situated, Plaintiff alleges that Defendant violated the FLSA and the IMWL by failing to maintain accurate records and pay overtime wages of one-and-a-half times his hourly wage. (*Id.* ¶¶ 37-41, 50-52.) In Count III, Plaintiff alleges that Defendant violated the IWPCA by failing to pay him and putative class members on a timely basis, taking improper deductions for meal breaks, and failing to pay overtime wages and other benefits. (*Id.* ¶¶ 58-62.) Plaintiff requests judgment against Defendant for willfully violating the FLSA, the IMWL, and the IWPCA. (*Id.* ¶ E.)

On June 13, 2012, Defendant moved to compel arbitration and stay these proceedings. (R. 12, Def.'s Mot.) Defendant asserts that the Agreement requires Plaintiff to submit to binding arbitration and eliminates the Court's subject matter jurisdiction during the pendency of the arbitration. (R. 14, Def.'s Mem. at 2-3.) On July 12, 2012, Plaintiff filed a response stating that he "does not oppose Defendant's motion and agrees to pursue all claims through arbitration." (R. 20, Pl.'s Resp.) Defendant filed a reply on July 16, 2012, arguing that "Plaintiff's response is misleading and constitutes an improper end-run around having this Court determine the scope of arbitration." (R. 21, Def.'s Reply at 1.) Defendant requests that the Court specifically exclude Plaintiff's class claims from arbitration, arguing that because the Agreement is silent as to class arbitration, class arbitration is prohibited. (*Id.*) On July 24, 2012, Plaintiff filed a sur-reply requesting that the Court grant Defendant's motion to compel arbitration and permit the arbitrator to determine whether Plaintiff may bring his class claims or, alternatively, grant Defendant's motion and specify that Plaintiff may pursue both his individual and his class claims

in arbitration. (R. 26, Pl.'s Sur-Reply at 1.) Plaintiff argues that the Agreement is broadly drafted and allows arbitration of class claims, not just his individual claims. (*Id.* at 3-4.)

## LEGAL STANDARD

The FAA governs questions of arbitrability in both federal and state courts. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA "declare[s] a national policy favoring arbitration," *Nitro-Lift Techs., L.L.C. v. Howard*, — S. Ct.—, No. 11-1377, 2012 WL 5895686, at *2 (Nov. 26, 2012) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)), and reflects "the fundamental principle that arbitration is a matter of contract," *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal citations and quotation marks omitted). The FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2.[2] The purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995). "[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421-22 (7th Cir. 2001) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

---

[2] Employment contracts, with the exception of those involving transportation workers, are covered by Section 2 of the FAA. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113, 119 (2001).

Under the FAA, federal district courts may compel arbitration and stay proceedings when there is: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to comply with the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc. (Zurich I)*, 417 F.3d 682, 687 (7th Cir. 2005); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Parties may only be compelled to arbitrate issues they have agreed to arbitrate. *Mastrobuono*, 514 U.S. at 57. If the Court is satisfied that the parties agreed to arbitrate, it must promptly compel arbitration. 9 U.S.C. § 4. The party opposing arbitration bears the burden of establishing why the arbitration provision should not be enforced. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

## ANALYSIS

The parties do not dispute that the Agreement is enforceable. Nor do the parties dispute that the types of claims Plaintiff brings fall within the scope of the Agreement. (R. 12, Def.'s Mot. at 2; R. 20, Pl.'s Resp. at 1.) Rather, the issue is whether the Court should compel Plaintiff to arbitrate only his individual claims, or whether he may also arbitrate his class claims. (R. 21, Def.'s Reply at 3; R. 26, Pl.'s Sur-Reply at 1.) Defendant argues that because the Agreement is silent as to class arbitration, the parties did not agree to arbitrate class claims, and therefore the Court may only refer Plaintiff's individual claims to arbitration. (R. 21, Def.'s Reply at 4) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l*, 130 S. Ct. 1758, 1775 (2010)). Plaintiff argues that the Agreement explicitly allows him to arbitrate class claims because it calls for the arbitration of "every possible claim" arising out of his employment. (R. 26, Pl.'s Sur-Reply at 3.) In the alternative, Plaintiff argues that the Agreement implicitly authorizes class arbitration by not explicitly prohibiting it. (*Id.* at 4-5.)

5

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). When the parties have signed an arbitration agreement, the only questions that are properly decided by a court are threshold questions of substantive arbitrability—whether the parties agreed to arbitrate a particular issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). These "gateway disputes" of substantive arbitrability that a court may resolve include: "1) a dispute regarding whether the parties are bound by a given arbitration clause; and 2) a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Emp'rs Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 576 (7th Cir. 2006) (quoting *Howsam*, 537 U.S. at 84) (internal quotation marks omitted); *accord Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion); *see also Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd.*, 683 F.3d 18, 25 (1st Cir. 2012) (holding that whether an arbitration agreement permitted associational arbitration was a question for the arbitrator to resolve because it was not a dispute as to the validity of the agreement or as to whether the underlying claims were covered by the agreement). Questions of procedural arbitrability—which include disputes concerning prerequisites and conditions precedent to arbitration; allegations of waiver, delay, or other similar defenses to arbitrability; the preclusive effect of state court judgments; and the construction of the contract language itself—are reserved for an arbitrator. *Howsam*, 537 U.S. at 84-85; *Moses H. Cone*, 460 U.S. at 24-25; *Zurich Am. Ins. Co. v. Watts Indus., Inc. (Zurich II)*, 466 F.3d 577, 581 (7th Cir. 2006). Therefore, once a court resolves any questions of substantive arbitrability and determines that the parties agreed to arbitrate the underlying issues, it must compel arbitration. *See*

*Howsam*, 537 U.S. at 84-85; *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032–33 (7th Cir. 2012).

**I.    Whether the Agreement permits class arbitration is a question of procedural arbitrability for an arbitrator to decide.**

The Supreme Court addressed the question of whether a court or an arbitrator should determine whether an arbitration agreement allows class arbitration in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. at 451, although it produced no controlling majority opinion. A plurality of the Justices in *Bazzle* determined that the issue was a question of procedural arbitrability, and thus concluded that an arbitrator, not a court, should decide whether an arbitration agreement permits class arbitration. *Id.* at 452-53. Because there was no majority opinion, *Bazzle* left open the question of whether a court or an arbitrator should determine the arbitrability of class claims. *Stolt-Nielsen*, 130 S. Ct. at 1771-72.

The question arose again in *Stolt-Nielsen S.A. v. AnimalFeeds International*, 130 S. Ct. 1758, 1771-72 (2010). The arbitration agreement at issue there was silent as to class claims. The parties stipulated, however, that the silence in the agreement meant that they had not reached a consensus as to whether the terms of their arbitration agreement allowed class arbitration, and the parties agreed to submit the question to the arbitrators. *Id.* at 1765-66. The Supreme Court held that the arbitration panel's determination that the agreement authorized class arbitration improperly rested on "its own view of sound policy." *Id.* at 1767-68. According to the Court, the arbitration panel should instead have identified and applied governing law from the FAA or either federal maritime or New York state law. *Id.* at 1768.

7

The Supreme Court later clarified that its narrow holdings in *Stolt-Nielsen* were: (1) that the arbitration panel allowed class arbitration for improper reasons; and (2) that the particular agreement at issue in *Stolt-Nielsen* could not be interpreted to allow class arbitration. *Concepcion*, 131 S. Ct. at 1750 (citing *Stolt-Nielsen*, 130 S. Ct. at 1773-76). The *Stolt-Nielsen* Court stated that it had "no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration." 130 S. Ct. at 1776 n.10. It only reiterated the general rule that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 1775. The question of whether a court or an arbitrator should determine whether an agreement authorizes class arbitration remains open at the Supreme Court level. *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 633-34 (5th Cir. 2012) (discussing *Bazzle* and *Stolt-Nielsen*).

The question also remains open at the Seventh Circuit, which has not addressed the question of who should decide whether an arbitration agreement permits class arbitration when the agreement is silent on the issue. Its caselaw addressing consolidated arbitration, however, is instructive. In *Employers Insurance Co. of Wausau v. Century Indemnity Co.*, the Seventh Circuit held that "the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve." 443 F.3d at 577. Relying on *Howsam*, the Seventh Circuit found that the dispute about consolidated arbitration was not a dispute about substantive arbitrability—the parties agreed that the arbitration clause was valid and that their underlying dispute was subject to arbitration—but rather about procedural arbitrability, or "the kind of arbitration proceeding the parties agreed to." *Id.* at 578-79 (quoting *Bazzle*, 539 U.S. at 453-53) (citing *Howsam*, 537 U.S. at 85).

In *Blue Cross Blue Shield of Massachusetts, Inc. v. BCBS Insurance Co.*, the Seventh Circuit reaffirmed its *Wausau* holding that arbitrators have the discretion to interpret an arbitration contract and determine whether consolidated arbitration is permitted. 671 F.3d 635, 640 (7th Cir. 2011). Although the *BCBS* court drew distinctions between consolidated arbitration and class arbitration, *id.*, prior Seventh Circuit precedent has looked to consolidated arbitration cases to guide its analysis regarding class arbitration. *Champ v. Siegel Trading Co.*, 55 F.3d 269, 274-75 (7th Cir. 1995), *abrogated on other grounds by Bazzle*, 539 U.S. 452 (2003) (finding "no meaningful basis to distinguish between" class arbitration and consolidated arbitration for purposes of seeking guidance from other circuits' decisions regarding consolidated arbitration).[3] The Third Circuit has also analogized class arbitration and consolidated arbitration. *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 587-88 (3d Cir. 2007) (citing *Bazzle*, a class arbitration case, in support of its decision that arbitrators should determine whether consolidated arbitration is appropriate); *see also* 1 Thomas H. Oemke, *Commercial Arbitration* § 20:44 (3d ed. 2012) ("As the issue of consolidation in arbitration is analogous to class arbitration, [*Bazzle*'s] holding that arbitrators, not courts, decide whether an agreement provides for class arbitration would control; thus, the arbitrator (not the court) should

---

[3] In *Champ v. Siegel Trading Co.*, the Seventh Circuit held that absent an express provision for class arbitration in the arbitration agreement, the district court did not have authority to certify a class for arbitration. 55 F.3d at 277. *Bazzle* abrogated the holding in *Champ*. The decision in *Champ* rested on the finding "that section 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter." *Id.* at 275. The *Bazzle* plurality concluded that the FAA allows an arbitrator to determine whether an arbitration agreement implicitly prohibits class arbitration, *see* 539 U.S. at 453, and Justice Stevens' concurrence stated that nothing in the FAA precludes class arbitration when the arbitration agreement is silent on the matter, *id.* at 454-55. Nevertheless, the Seventh Circuit's analysis and application of caselaw concerning consolidated arbitration to address questions concerning class arbitration remains instructive.

9

determine whether a contract provides that arbitration proceedings should be consolidated."). With no clear guidance from either the Supreme Court or the Seventh Circuit on who should determine the arbitrability of class claims under arbitration agreements, the Court is guided by *Wausau* and *BCBS*.

Although the Seventh Circuit has not directly addressed the question of whether the arbitrability of class claims is a question for a court or an arbitrator to decide, the Second and Third Circuits have. Courts of Appeals in both circuits have interpreted *Stolt-Nielsen* in the context of parties who submitted the question of whether their arbitration agreements allowed for class arbitration to the arbitrator and subsequently sought to vacate the arbitrator's decision that they did. In *Sutter v. Oxford Health Plans LLC*, the Third Circuit held that although the relevant arbitration clause did not refer to class arbitration, it was not "silent" in the *Stolt-Nielsen* sense. 675 F.3d 215, 217-18 (3d Cir. 2012) (affirming the district court's denial of the motion to vacate the arbitrator's decision), *cert. granted*, 81 U.S.L.W. 3070 (U.S. Dec. 7, 2012) (No. 12-135). The court held that the arbitrator's reliance on the sweeping language of the arbitration clause supported his finding that the agreement implicitly authorized class arbitration. *Id.* at 222-24 ("[W]here, as here, the parties' intent with respect to class arbitration is in question, the breadth of their arbitration agreement is relevant to the resolution of that question."); *see also Bazzle*, 539 U.S. at 451-52 (finding that the parties' dispute about what the arbitration agreement meant fell within the broad scope indicated by the language in the agreement that "[a]ll disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract" would be "resolved by binding arbitration"); *Fantastic Sams*, 683 F.3d at 25-26 (citing

the "sweeping language of the arbitration clauses" to support its decision that the arbitrators should decide if the agreement authorized associational arbitration).

On December 7, 2012, the Supreme Court granted certiorari in *Sutter*, but this Court notes that the Supreme Court only certified the circuit conflict[4] question concerning the scope of an arbitrator's power to authorize class arbitration. There is no clear indication that the Supreme Court plans to address whether a district court should refer this decision to an arbitrator. In *Jock v. Sterling Jewelers Inc.*, the Second Circuit held that the arbitrator did not exceed her authority in relying on state law and the terms of the agreement to determine that an arbitration agreement that did not explicitly mention class arbitration implicitly authorized it. 646 F.3d 113, 125-27 (2d Cir. 2011) (reversing the district court's vacatur of the arbitrator's determination), *cert. denied*, 132 S. Ct. 1742 (2012). The court reasoned that "[the employees] implicitly agreed that they may seek to [arbitrate their disputes] as a class, and [the defendant] is certainly not being forced to arbitrate with anyone whom it did not require to arbitrate with it." *Id.* at 127 n.2. The Second Circuit distinguished between the *Stolt-Nielsen* sense of "silence" and the lack of an express agreement to arbitrate class claims, holding that "[t]he plaintiffs' concession that there was no explicit agreement to permit class arbitration, however, is not the same . . . as stipulating that the agreement is 'silent' on the issue of class arbitration in the sense that 'silent' was used by the *Stolt-Nielsen* majority." *Id.* at 123.

---

[4] The petition for certiorari explicitly asked the Supreme Court to resolve the current conflict between the view held by the Third and Second Circuits in *Sutter* and *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 125-27 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1742 (2012), and the more narrow view held by the Fifth Circuit in *Reed*. Petition for Writ of Certiorari at 3-4, *Sutter*, 675 F.3d 215 (No. 12-135).

An arbitrator's decision on a motion to vacate, such as those in *Sutter* and *Jock*, is reviewed with a higher degree of deference than an initial determination of whether an arbitrator has the authority to make the decision in the first instance. *See Sutter*, 675 F.3d at 219-20. Nonetheless, *Sutter* and *Jock* are instructive in their narrow interpretations of *Stolt-Nielsen* and the distinctions they draw between contractual "silence" and the lack of express authorization of class arbitration. Here, unlike in *Stolt-Nielsen*, the parties genuinely disagree as to whether the Agreement covers class arbitration. Given this disagreement, the parties' failure to mention class arbitration in the Agreement is not "silence" in the *Stolt-Nielsen* sense. *See Sutter*, 675 F.3d at 222-23 (holding that because the parties disputed their intent regarding class arbitration, the arbitrator had authority to order class arbitration "so long as it [stood] on a contractual basis"). Relying on *Stolt-Nielsen*, Defendant argues that class arbitration is not permitted unless the Agreement expressly allows it. (R. 21, Def.'s Reply at 3-4.) Defendant contends that the Agreement is silent because it does not mention class arbitration. (*Id.* at 4.) Therefore, Defendant argues, the Court only has the authority to send Plaintiff's individual claims to arbitration. (*Id.*) (citing *Stolt-Nielsen*, 130 S. Ct. at 1775). Defendant overestimates the support *Stolt-Nielsen* provides for its position. "*Stolt–Nielsen* did not establish a bright line rule that class arbitration is allowed only under an arbitration agreement that incants 'class arbitration' or otherwise expressly provides for aggregate procedures." *Sutter*, 675 F.3d at 222; *accord Jock*, 646 F.3d at 121 (noting that "the [*Stolt-Nielsen*] Court declined to hold that an arbitration agreement must *expressly* state that the parties agree to class arbitration"); *Fantastic Sams*, 683 F.3d at 22 (finding that the narrow holding in *Stolt-Nielsen* did not apply to the issue before it because the parties in *Fantastic Sams* failed to stipulate that the agreement's silence meant that

12

they had not reached an agreement and thus, even though it made no express reference to class arbitration, the agreement was not "silent" in the *Stolt-Nielsen* sense). *Stolt-Nielsen* acknowledged that arbitration agreements may implicitly authorize class arbitration, even though class arbitration may not be "infer[red] solely from the fact of the parties' agreement to arbitrate." 130 S. Ct. at 1775. Defendant's argument that class arbitration is not available because the Agreement does not explicitly authorize it is not supported by *Stolt-Nielsen*. The Court does not read *Stolt-Nielsen* to require express authorization of class arbitration in the parties' agreement.

The Court notes that there is no judicial consensus on the instant question within this District. In *Goodale v. George S. May International Co.*, the court interpreted *Stolt-Nielsen* as "squarely foreclos[ing] the possibility that class claims are arbitrable." No. 10 C 5733, 2011 WL 1337349, at *2 (N.D. Ill. Apr. 5, 2011). This Court disagrees with *Goodale*'s reading of *Stolt-Nielsen* and finds that the Agreement presently at issue is not "silent" in the same way the agreement in *Stolt-Nielsen* was silent. While *Goodale* determined that the distinction between "silent" as the *Stolt-Nielsen* majority meant it and "silent" by way of not expressly authorizing class arbitration "split the finest of hairs," *id.*, this Court finds that distinction crucial to understanding the holding of *Stolt-Nielsen*.[5] *See Jock*, 646 F.3d at 120 ("The [*Stolt-Nielsen*] Court's interpretation of the parties' 'silence' is key" to the holding.). Relying on *Goodale*, another court in the District painted *Stolt-Nielsen*, and, specifically, the meaning of "silent," with

---

[5] Relying on *Goodale*, Defendant argues that in a similar situation, "this Court" determined that it could order only the plaintiffs' individual claims to arbitration. (R. 21, Def.'s Reply at 4.) However, contrary to Defendant's argument, the decisions of other courts in this District are not binding upon this Court and have no precedential value. *Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 970 (7th Cir. 2012) ("[D]istrict courts' decisions are not authoritative, even in the rendering district (other district judges may disagree).").

broad strokes in *Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 WL 2977262, at *5 (N.D. Ill. July 20, 2012). *Corrigan* cited *Stolt-Nielsen* for the proposition that "it is appropriate for the court to determine whether the parties have agreed to class arbitration," a contention that this Court simply concludes is not supported by *Stolt-Nielsen*.

This Court's interpretation of *Stolt-Nielsen* instead follows our colleague's Judge Lefkow's decision in *Collier v. Real Time Staffing Services, Inc.*, in which the court held that whether an arbitration agreement allows parties to arbitrate class claims is a procedural issue to be resolved by an arbitrator. No. 11 C 6209, 2012 WL 1204715, at *5 (N.D. Ill. Apr. 11, 2012) (Lefkow, J.). The Court's decision is consistent with our colleague Judge Chang's decision in *State Farm Fire & Casualty Co. v. Pentair, Inc.*, in which the court referred to an arbitrator the question of whether claims could be aggregated under the parties' arbitration agreement. No. 11 C 6077, 2012 WL 3904104, at *3 (N.D. Ill. Sept. 7, 2012) (Chang, J.). Citing *Howsam* and *Wausau*, Judge Chang noted that the interpretation of an arbitration agreement is a question of procedural arbitrability for the arbitrator to resolve. *Id.* The Court finds *Pentair*'s treatment of *Wausau* and *Howsam* persuasive and in accordance with Seventh Circuit precedent regarding consolidated arbitration, as well as with other circuits' holdings on class arbitration. *See also Collier*, 2012 WL 1204715, at *4-*5 (examining *Stolt-Nielsen*, *Wausau*, and *BCBS*). Because the question of whether the Agreement at issue here implicitly permits class arbitration is not a question of whether the Agreement is valid or whether it covers the parties' underlying dispute, it is a question of procedural arbitrability for the arbitrator to decide. *See Wausau*, 443 F.3d at 576.

**II.     The parties agreed that an arbitrator should interpret the Agreement.**

The Court finds support for its determination that the arbitrator should decide whether the Agreement permits class arbitration within the Agreement itself. Recently, in *Reed v. Florida Metropolitan University, Inc.*, the Fifth Circuit found that an arbitration agreement that was executed in 2008 and explicitly adopted the American Arbitration Association ("AAA") Commercial Rules had implicitly adopted the Supplementary Rules for Class Arbitrations, which the AAA enacted in October 2003 in response to *Bazzle*. 681 F.3d at 633-35 (affirming the district court's referral of the issue of class arbitration to the arbitrator). The Fifth Circuit noted that AAA Supplementary Rule 3 explicitly states that "the arbitrator shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." AAA Supp. R. 3 (Oct. 8, 2003); *Reed*, 681 F.3d at 635. The Fifth Circuit then concluded that "[t]he parties' consent to the Supplementary Rules, therefore, constitute[d] a clear agreement to allow the arbitrator to decide whether the part[ies'] agreement provide[d] for class arbitration." *Id.* at 635-36; *see also Fantastic Sams*, 683 F.3d at 25-26 (citing the provision within the arbitration agreement, requiring that any interpretation of the agreement be settled through arbitration in accordance with AAA Rules, to support its conclusion that the arbitrators should determine whether the parties agreed to authorize associational arbitration).

Similarly, the present Agreement specifies that arbitration hearings are to proceed "under the AAA's rules." (R. 14, Def.'s Mem., Ex. B-1, Agreement.) The Agreement was signed by Plaintiff on December 14, 2007, long after the AAA enacted the Supplementary Rules for Class Arbitrations in 2003. Therefore, the parties' agreement to proceed "under the AAA's rules" incorporates the Supplementary Rules for Class Arbitrations. *Reed*, 681 F.3d at 635 ("[C]onsent

15

to any of the AAA's substantive rules also constitutes consent to the Supplementary Rules.").

The Supplementary Rules for Class Arbitrations apply to:

> any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class . . . These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration.

AAA Suppl. R. 1(a) (Oct. 8, 2003). Thus, the AAA Supplementary Rules for Class Arbitrations will govern the arbitration that this Court is required to compel. By adopting AAA Supplementary Rule 3 in their Agreement, the parties agreed that an arbitrator, and not this Court, would determine whether the Agreement authorizes class arbitration. *Id.* This finding is consistent with basic principles of contract law, which require courts to enforce contracts according to their terms. *Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010) (holding that courts are to give contract terms their plain meaning); *see also Mastrobuono*, 514 U.S. at 53-54; *Concepcion*, 131 S. Ct. at 1745-46 (requiring courts to "enforce [arbitration agreements] according to their terms"); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999) (holding that broad arbitration agreements similar to the instant Agreement create a presumption of arbitrability and should be interpreted broadly).

As the parties do not dispute the validity of the Agreement or its applicability to the underlying claims, the FAA mandates that this Court enforce the Agreement according to its terms by promptly staying these proceedings and compelling arbitration. 9 U.S.C. § 4; *Concepcion*, 131 S. Ct. at 1752; *see also Howsam*, 537 U.S. at 83; *Wausau*, 443 F.3d at 576; *Gore*, 666 F.3d at 1032-33. Defendant has failed to meet its burden to establish why the Agreement should not be enforced according to its terms. *See Randolph*, 531 U.S. at 91-92.

"[I]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail," especially when the arbitration clause is broadly inclusive. *AT&T Techs., Inc.*, 475 U.S. at 650 (internal citations and quotation marks omitted). The Agreement here makes no mention of class arbitration, and the only claims specifically omitted are those relating to worker's compensation and ERISA. (R. 14, Def.'s Mem., Ex. B-1, Agreement.) Therefore, whether the agreement permits class arbitration is a question that "concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question." *Bazzle*, 539 U.S. at 452-53. Accordingly, the Court finds that the question of whether the parties' Agreement permits class arbitration is one of procedural arbitrability and thus refers the question to an arbitrator.

## CONCLUSION

For the reasons stated above, Defendant's motion to compel arbitration and stay the proceedings (R. 12) is GRANTED. The Court does not indicate whether Plaintiff may arbitrate his class claims or only his individual claims. The parties are instructed to pursue arbitration and to exhaust all settlement possibilities for any issues that remain after arbitration. During the stay, this lawsuit will be administratively closed with full leave to reinstate upon the completion of the arbitration. The Clerk of the Court is directed to administratively close this action.

ENTERED: _____
Judge Ruben Castillo
United States District Court


Dated: December 10, 2012